**UNITED STATES of America, Appellee,**

v.

**John T. SHIEL, Appellant.**

**No. 79–5140.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1979.

Decided Dec. 14, 1979.

Sebastian K. D. Graber, Stetler & Townsend, Alexandria, Va., on brief, for appellant.

Frances M. Green, Sp. Asst. U. S. Atty., Alexandria, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, RUSSELL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Appellant was a participant in a September 1, 1978 demonstration at the Pentagon opposing nuclear arms. The demonstrators gathered in the middle of "Concourse 10", an area similar to a public shopping mall. The Concourse is approximately forty feet wide and open to the public during daytime hours. It contains a bank, a post office and retail stores.

Without interference the demonstrators chanted and displayed placards, e. g., "Every bomb a theft from those who hunger." Shortly after noon, appellant and eight others collapsed upon the floor of the Concourse to symbolize the effect of a neutron bomb detonation. By doing so, they obstructed passage. A crowd of onlookers and passersby assembled as the nine "victims" lay prostrate in the Concourse. The captain of a contingent of federal protective service officers which had observed the demonstration silently from nearby announced over a bullhorn that the persons lying on the floor must get up because they were blocking pedestrian traffic.

Upon orders from the captain one officer approached each demonstrator and stated that arrests would be made in two minutes unless the demonstrator removed himself from the floor. Upon appellant's refusal to get up, he was arrested and issued a citation for violating a General Services Administration regulation, 43 Fed.Reg. 29,001, 29,002 (1978) (to be codified in 41 C.F.R. § 101–20.304).[1] That regulation provides: Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals.

Appellant was found guilty after his trial before a United States Magistrate, who imposed a fifty dollar fine, suspended the same and placed appellant on unsupervised probation for one year. The appeal is from the district court's affirmance of the Magistrate's judgment of conviction. We affirm.

Appellant does not earnestly contend that the regulation for violation of which he stands convicted is unconstitutional as applied to his actual course of conduct. He concedes that his behavior in blocking the Concourse might properly be prohibited and suggests that prosecution would have been proper under 41 C.F.R. § 101–20.311(b) (1978), which prohibits the "blocking of entrances, driveways, walks, loading platforms or fire hydrants." However, appellant argues that the regulation mandating compliance with an officer's order is deficient on its face as overbroad and vague under established First Amendment principles. On that predicate, appellant argues that the prosecution should have been dismissed.

We, however, are not called upon to decide whether the regulation fails to pass muster under the First Amendment in other imaginable sets of circumstances not actually presented by this case. *Broadrick v. Oklahoma,* 413 U.S. 601, 610–15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (holding that overbreadth attacks on statutes based on First Amendment grounds are not appropriate where conduct other than "pure speech" is involved); *cf. United States v. Glenn,* 562 F.2d 324, 325 (4th Cir. 1977). To the extent appellant's conduct, prior to his simulated death in the Concourse, enjoyed First Amendment protection as "symbolic speech", that protection dissipated when appellant went beyond expression, and refused to obey a reasonable and legitimate order to cease blocking the passage of others.

1. The predecessor regulation, containing similar language, is presently codified as 41 C.F.R. § 101–20.303 (1978).

Appellant's unjustified refusal was not protected by the First Amendment,[2] and he lacks standing to raise First Amendment facial invalidity contentions not concerned with invocation of the regulation with respect to his own behavior. None of the exceptional circumstances traditionally invoked to justify relaxed standing requirements in First Amendment adjudications and described in *Broadrick v. Oklahoma, supra,* 413 U.S. at 611–13, 93 S.Ct. 2908, especially the interference with "pure speech", pertain here. *Compare Hirschkop v. Snead,* 594 F.2d 356, 362–63 (4th Cir. 1979) (*en banc*).

■ Moreover, if we were called upon to decide the question urged upon us by appellant, the conclusion is compelling that the regulation is not substantially overbroad under *Broadrick. See* 413 U.S. at 615, 93 S.Ct. 2908. Appellant concedes and the evidence established that the regulation has been uniformly construed by the magistrates and judges to require obedience to only *proper* directions issued thereunder, and we so construe it in this case.[3] It would be an unreasonable interpretation to read the regulation as providing a sanction, and thus an encouragement, for improper orders of federal protective officers. Construed, as extending only to proper orders, the regulation was validly invoked against appellant. The legitimacy of the government's interest, in the abstract, of insuring the public's compliance while in or on

government property with proper directions of law enforcement officers and the legitimacy of the direction given in this case are apparent.

Appellant's asserted defense of justification based on supposed international law transcending the law of this land is untenable.

*AFFIRMED.*

---

2. *See Bachellar v. Maryland,* 397 U.S. 564, 571, 90 S.Ct. 1312, 1316, 25 L.Ed.2d 570 (1970): "[I]f the jury believed the State's evidence, petitioners' convictions could constitutionally have rested on a finding that they sat or lay across a public sidewalk with the intent of fully blocking passage along it, or that they refused to obey police commands to stop obstructing the sidewalk in this manner and move on."

3. Appellant does contend that some officers have in some instances sought compliance by others with orders under 41 C.F.R. § 101–20.-303 (1978) to cease activities which appellant asserts are "obviously within the protection of the First Amendment." Appellant cites *Townsend v. Carmel,* Civil No. 79–0746 (D.D.C. April 6, 1979). Bare assertions of occasional instances of *improper* orders having been issued under the regulation do not, however, bolster appellant's claim of overbreadth or vagueness. The

most artfully drawn statute or regulation is not totally immune from some intentional abuse or negligent misapplication. On the instant record we are of the view that the risk of danger to First Amendment rights under this regulation is at best *de minimis.* Were appellant's contention to prevail, and every statute or regulation designed to insure civilized conduct, and thereby guarantee constitutional rights of bystanders and passersby, called into question, the risk of infringement of First Amendment rights would be increased, not diminished.

Where an improper order is issued under an adequately drawn statute, or regulation a successful defense can be based on the order's impropriety. The mere theoretical possibility, or even the occasional occurrence of an improper order does not nullify the statute or regulation entirely.