UNITED STATES of America, Appellee,

v.

**Richard L. OCCHINO, Appellant.**

**No. 80–1343.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 2, 1980.

Decided Sept. 8, 1980.

---

2. This is based on a charge of $75.00 per hour.

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

Thomas K. Berg, U. S. Atty. and Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Richard L. Occhino appeals from his conviction for disorderly conduct on federal property under 41 C.F.R. § 101–20.305.

The incident which led to Occhino's conviction began when he entered the federal courthouse in Duluth, Minnesota, with the intention of visiting the office of his congressman.[1] Occhino was met at the door to the courthouse by a Federal Protective Service officer.[2] Occhino told the officer that he was on his way to the congressman's office. The officer asked Occhino if he had an appointment.[3] Occhino replied that he did not have an appointment and that he did not need one. The officer then accompanied Occhino to the second floor hallway just outside of the congressman's office. As they arrived at the door, the officer stepped in front of Occhino and entered the office. There he was told that the congressman's staff did not want Occhino in the office. The officer went back into the hallway and informed Occhino that he was not welcome in the office. Occhino demanded to know why and the officer stated that Occhino was well aware of the reasons why. Occhino became angry and began cursing in what, according to the officer's testimony, was an extremely loud voice.[4]

The officer testified at trial that Occhino continued in this manner "for a good minute or so" and that in his opinion Occhino's voice was loud enough to have been heard throughout the entire floor. At that point the officer advised Occhino that he was creating a disturbance and that he should leave the building. Occhino refused and continued to curse in a loud, angry voice.[5]

1. Occhino was trying to obtain the address of the Minnesota Public Service Commission. A clerk in the district court had suggested that he check with the congressman's office.

2. Testimony at trial indicated that Occhino was a frequent visitor to the courthouse and that he and the officer knew each other by name.

3. The officer had previously been instructed by the congressman's office that Occhino was not to be allowed to come up to the office unless he had an appointment.

4. According to the officer's uncontroverted testimony, Occhino said, "This is the United States congressman's office. I have the right to go where I fucking want to and you can't keep me out of this fucking office."

5. The officer testified that "He advised that he wasn't going to be leaving the fucking building, that if he was going to leave he was going to be fucking carried out."

The officer advised Occhino that he would be cited for disorderly conduct. Occhino then accompanied the officer to the Federal Protective System office where he was ticketed. He was convicted of disorderly conduct pursuant to 41 C.F.R. § 101–20.305 and was sentenced to ten days in jail.

We affirm.

Occhino alleges on appeal that the conviction violated his first amendment rights because it was based on the content of his expression and not his conduct. He argues that the trial court failed to find that his words were "fighting words" under the rationale of *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942),[6] thus rendering his conviction invalid.

 Occhino's reliance on a line of cases involving statutes which prohibit certain kinds of speech is inapposite here. The statute in question is directed primarily at specific types of *conduct*.[7] While the prohibited conduct may include speech, it does so only where the manner of expression is in itself unreasonable. Reasonable time, place and manner regulation may be applied to speech irrespective of content. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975).

Furthermore, the record provides little support for Occhino's contention that his conviction was, in fact, based on the content of his speech. The district court did express dismay at the language employed by Occhino during the incident. However, the court also indicated that it found Occhino's overall conduct unreasonable. There was uncontroverted testimony that Occhino's voice was exceedingly loud. He was advised that he was creating a disturbance and was asked to leave. He refused and continued to behave in the same manner. Occhino's conduct appears well within the scope of the statute thus the findings of the district court cannot be said to be clearly erroneous. *United States v. Rischard*, 471 F.2d 105 (8th Cir. 1973). Accordingly, the judgment of the district court is affirmed.

---

**6.** The *Chaplinsky* court defined "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). *See Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Hammond v. Adkisson*, 536 F.2d 237 (8th Cir. 1976).

**7.** 41 C.F.R. § 101–20.305 provides:

Any unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.