UNITED STATES of America, Plaintiff,

v.

**Charles PARISI, Defendant.**

**No. 81 M 017.**

United States District Court,
N.D. Illinois, E.D.

April 20, 1981.

Mary A. Thomas, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Edward A. Voci, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROSZKOWSKI, District Judge.

Before the court are the motions of defendant, Charles Parisi, to dismiss the charges against him; to suppress evidence; for discovery; for notice of the government's intention regarding the use of evidence at trial; and for a ruling on the trial held April 6, 1981.

On January 5, 1981, in response to a call received from a post office official at the United States Postal Service facility located at 211 South Clark Street, Chicago, eight officers of the Federal Protective Service ("FPS"), including officer, Raymond Pawlowski, arrested defendant, Parisi, at approximately 4:00 p.m. and charged him with violations of 41 C.F.R. §§ 101–20.304 and 101–20.305.

Defendant, and somewhere between ten to sixteen individuals, were allegedly protesting, handing out literature, picketing, singing songs, and giving out legal advice inside the Post Office.

The FPS officers asked defendant, and the others, to stop singing and to leave the premises. The group refused.

Thereafter, the FPS officers issued citations to the group and requested identification. Upon his refusal to produce identification, the officers arrested, searched, and then locked up defendant, Parisi. After being locked up, defendant then produced identification and received a mandatory citation charging him with the above violations.

On March 16, 1981, defendant pled not guilty to the charges against him and challenged the constitutionality of the regulations.

The motions now before the court followed.

We consider first defendant's motion to dismiss.

Count I of the citation issued against defendant charges him with violations of 41 C.F.R. § 101–20.304 ("304"). That regulation provides,

> Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protection officers and other authorized individuals.

Defendant contends that this regulation is unconstitutional on its face in that it "does not adequately notify a person of ordinary intelligence as to what specific conduct is proscribed;" and, therefore, the regulation is vague and overbroad. Defendant also challenges the regulation on the grounds that it gives the Federal Protective Service and "other authorized individuals" unfettered discretion to exercise police powers because no standards are provided to govern the exercise of discretion.

The government disagrees.

Count II charges defendant with violations of 41 C.F.R. § 101–20.305 ("305"). That regulation provides,

> Any unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots, which otherwise impedes or disrupts the performance of official duties by Government employees, or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

Defendant challenges this regulation on the grounds that it is unconstitutionally vague and overbroad on its face because it does not give a reasonable person notice of what conduct is proscribed and gives unfettered discretion to the authorities enforcing this regulation to curb lawful, First Amendment, activities.

The government disagrees.

## MOTION TO SUPPRESS

We consider first defendant's motion to suppress all oral statements obtained by the government subsequent to charging him with violations of §§ 304 and 305, and during the officers interrogation of defendant at the Marshal's lock-up, on the grounds that the officers did not advise defendant of his Fifth Amendment *Miranda* rights.

The government has stated that it has no intention of using such statements in its case in chief, but it does seek to reserve the right to use any such statements in rebuttal pursuant to *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris,* the Supreme Court held that,

> *Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that

the trustworthiness of the evidence satisfies legal standards.

*Harris,* 401 U.S. at 224, 91 S.Ct. at 645; See also, *Walder v. U.S.,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

More recently, the Supreme Court reaffirmed the *Harris* holding stating:

> Similarly, in *Harris v. New York* [citation omitted] and *Oregon v. Hass,* 420 U.S. 714 [95 S.Ct. 1215, 43 L.Ed.2d 570] (1975), statements taken in violation of *Miranda,* and unusable by the prosecution as part of its own case, were held admissable to impeach statements made by the defendant in the course of his direct testimony. *Harris* also made clear that the permitted impeachment by otherwise inadmissable evidence is not limited to collateral matters. 401 U.S. at 225, 91 S.Ct. at 645.

*U.S. v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 1915, 64 L.Ed.2d 559 (1980). See also, *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979), where the Supreme Court refused to extend the *Harris* principle to permit impeachment, by otherwise inadmissable evidence, in circumstances where the testimony was obtained in response to a grant of immunity. The basis of the Court's holding was its finding that such testimony is the essence of coerced testimony and that in *Harris* and *Hass* the Court expressly noted that defendant made "no claim that the statements made to the police were coerced or involuntary." *Harris,* supra, 401 U.S. at 224, 91 S.Ct. at 645; *Oregon, supra,* 420 U.S. at 722–723, 95 S.Ct. at 1220–1221.

Accordingly, since the government does not intend to use these statements in its case in chief, defendant's motion to suppress is denied. The court will permit the use of these statements by the government for impeachment purposes on rebuttal.

## DISCOVERY

■ Defendant's motion for discovery is hereby denied as moot as the government has complied with all of defendant's requests.

## THE VALIDITY OF THE REGULATIONS

The facts of the instant case raise issues which require a reconciliation between what, defendant concedes, is a legitimate governmental interest, the protection of its property, and the defendant's, and others, exercise of First Amendment activities.

As the Supreme Court stated in *Greer v. Spock,* 424 U.S. 828, 836–837, 96 S.Ct. 1211, 1216–1217, 47 L.Ed.2d 505 (1976),

> The Court of Appeals was mistaken ... in thinking that *Flower* [*v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653] stands for the principle that whenever members of the public are permitted freely to visit a place owned or operated by the Government, then that place becomes a "public forum" for purposes of the First Amendment.... The guarantees of the First Amendment have never meant "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." [citations omitted]. The state, no less than a private owner of property, has the power to preserve property under its control for the use to which it is lawfully dedicated. [citation omitted].

Additionally, the *Greer* Court, quoting from *Hague v. CIO,* 307 U.S. 496, 515–516, 59 S.Ct. 954, 963–964, 83 L.Ed. 1423 (1938), noted,

> The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comport and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

*Greer,* 424 U.S. at 835–836, 96 S.Ct. at 1216.

■ Consequently, while it is clear on the one hand that First Amendment activity can be circumscribed when necessary to further a sufficiently strong public interest (See, *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1976); *Adderley*

*v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), it is equally clear that any significant restriction of First Amendment freedoms carries a heavy burden of justification. See e.g. *Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 656–657, 46 L.Ed.2d 659 (1976); *Grayned v. City of Rockford,* 408 U.S. 104, 116–117, 92 S.Ct. 2294, 2303–2304, 33 L.Ed.2d 222 (1972).

In *Grayned v. City of Rockford,* the Supreme Court defined the crucial inquiry as "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." 408 U.S. at 116, 92 S.Ct. at 2303.

In the instant case, the government does not appear to contest the fact that defendant was exercising his First Amendment rights at the time of his arrest. Nor is it disputed that a Post Office is a public place.

Although the *Grayned* Court stated that "[t]he right to use a public place for expressive activity may be restricted only for weighty reasons" (408 U.S. at 115, 92 S.Ct. at 2303), that Court likewise recognized that the particular public place involved must be considered in determining whether regulations, where the demonstration is peaceful, are reasonable. 408 U.S. at 116, 92 S.Ct. at 2303.[1]

> The nature of the place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.

408 U.S. 116 and fn. 33, 92 S.Ct. 2303.

Thus, in *Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), a silent vigil in a public library was held not to unduly interfere with the library's normal activities, although, as the *Grayned* Court noted, making a speech in the reading room almost certainly would, even though that same speech would be perfectly appropriate in a public park.

In assessing the reasonableness of a regulation, therefore,

... we must heavily weigh the fact that communication is involved; the regulation must be narrowly tailored to further the states' interest.

408 U.S. at 116–117, 92 S.Ct. at 2303–2304.

## A. VAGUENESS

■ An enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. In general, the Supreme Court has delineated three basic values which collide with, and, therefore, require proscription of, enactments which are vague.

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not giving fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abuts upon sensitive areas of basic First Amendment freedoms" it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked."

408 U.S. at 108–109, 92 S.Ct. at 2298–2299.

## B. OVERBREADTH

■ A clear and precise enactment, one which is not vague, may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct. See, *Zwickler v. Koota,* 389 U.S. 241, 249–250, 88 S.Ct. 391, 396–397, 19 L.Ed.2d 444 (1967)

---

1. While demonstrations which turn violent lose their protected quality as expression under the First Amendment, defendant here is charged merely with disorderly conduct. See, *Grayned,* 408 U.S. at 116 and fn. 32, 92 S.Ct. at 2302 and fn. 32.

and cases cited therein. The crucial question is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments. 408 U.S. at 114, 92 S.Ct. at 2302.

We turn now to a consideration of the two regulations at issue here.

First, it is noteworthy that at least one court has recently declared 41 C.F.R. 101–20.304 unconstitutionally vague and overbroad. In *Townsend v. Carmel,* 494 F.Supp. 30, 35 (D.C.D.C.1980), the district court held 304 to be unconstitutional, and, in addition, held further that:

> While defendants correctly assert that statutes apparently overbroad may be upheld by imposing a limiting construction upon them, *Broadrick v. Oklahoma,* 413 U.S. 601, 613 [93 S.Ct. 2908, 2916–2917, 37 L.Ed.2d 830] (1973), they have not presented such construction to the Court. The Court understands defendants' failure to offer a narrow construction of the regulation—41 C.F.R. § 101–20.304 is simply not conducive to limitation. Rather, as is apparent from both the plain meaning of the regulation and its application in the instant case, 41 C.F.R. § 101–20.304 affords the FPS and "other authorized officials" unfettered discretion to exercise limitless police powers. Individuals can be (and in the instant case have been) arrested merely for disobeying a FPS directive that the officer had no right to give.

In *Townsend,* defendants were arrested because they failed to leave the steps and areas adjacent to pillars at the Mall and River entrances to the Pentagon. The defendants were members of a group who, the Court noted, periodically exercised their First Amendment rights to demonstrate and distribute leaflets in an orderly fashion without disrupting the operations at the Pentagon and without blocking the ingress or egress to that building. Despite the fact that plaintiffs had not been acting in a disorderly fashion at any time, they were arrested for violating an FPS "policy" prohibiting more than two demonstrators at the Mall and River entrances to the Pentagon at any one time.

In the instant case, defendant, Parisi, was arrested for failing to produce identification upon the officer's demand. After defendant and the other anti-draft protestors left the Post Office at the order of the FPS officers, Parisi was arrested for not producing identification. Like the protestors in *Townsend,* defendant Parisi was arrested for violating an FPS officer's directive that it is not clear that the officer had a right to give where, as here, defendant had not been acting in a disorderly fashion.

The government here urges this court to follow the Fourth Circuit's decision in *United States v. Shiel,* 611 F.2d 526, 527 (4th Cir.1979). In *Shiel,* however, the court refused to decide whether 304 was deficient on its face as overbroad and vague. The Court found it unnecessary to address the regulation's constitutionality under the particular circumstances of that case. The defendant had conceded that his behavior in blocking Concourse 10 at the Pentagon while protesting against nuclear arms might properly have been prohibited. Defendant further agreed that prosecution of him would have been proper under another regulation prohibiting the "blocking of entrances, driveways, walks, loading platforms or fire hydrants."

The *Shiel* Court reasoned that:

> To the extent appellant's conduct, prior to his simulated death in the Concourse, enjoyed First Amendment protection as "symbolic speech," that protection dissipated when appellant went beyond expression, and refused to obey a reasonable and legitimate order to cease blocking the passage of others. Appellant's unjustified refusal was not protected by the First Amendment, and he lacks standing to raise First Amendment facial invalidity contentions not concerned with invocation of the regulation with respect to his own behavior.

611 F.2d at 527–528.

Despite its refusal to address the issue of the regulation's facial invalidity, the *Shiel* Court, in dicta, went on to state,

On the instant record we are of the view that the risk of danger to First Amendment rights under this regulation is at best de minimus. . . . Where an improper order is issued under an adequately drawn statute, or regulation a successful defense can be based on the order's impropriety.

611 F.2d at 528, fn. 3.

█ Nevertheless, despite the Fourth Circuit's hypothetical analysis, this court knows of no saving rule which provides that an order issued under a regulation, otherwise possibly overbroad or vague, can be interpreted so as to cure constitutional defects by applying the regulation only to "proper" orders. Rather, as the Supreme Court made clear in *Broadrick,*

. . . any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

413 U.S. at 613, 93 S.Ct. at 2916. Nevertheless, this court doubts that 304's broad sweep and grant of unfettered discretion to the Federal Protective Service Officers can be saved by a limiting construction that it be applied only when "proper" orders are issued under its provisions. As the *Townsend* Court noted, even if one adopted an interpretation of the regulation which allowed enforcement only for "proper" orders, the regulation, nevertheless, grants FPS officers limitless police powers and the authority to arrest individuals merely for disobeying a FPS directive that the officer may have no right to give.

Consequently, this court agrees with defendant's contentions that § 304 is facially invalid for overbreadth.

█ However, this court does not find § 305 to be facially overbroad. Section 305 is directed at specific types of conduct which, among other things, "impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner." The Supreme Court has repeatedly addressed vagueness and overbreadth challenges to statutes and regulations governing conduct and has routinely found that, although these statutes may be capable of some unconstitutional applications, they need not fall *in toto.* Rather, the Court has stated that,

. . . overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner.

See, *Broadrick,* 413 U.S. at 614–615, 93 S.Ct. at 2917 and cases cited therein. The *Broadrick* Court reasoned that:

Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a state from enforcing the statute against conduct that is admittedly within its power to prosecute.

413 U.S. at 615, 93 S.Ct. at 2917–2918. As has been previously noted, the government, as any private citizen, has a legitimate interest in preserving "property under its control for the use to which it is lawfully dedicated." Section 305 specifically provides for the regulation of conduct on federal property which in some fashion obstructs or impedes the use for which the property was intended.

Consequently, it is this court's view that regulation 305 is not facially vague or overbroad, and that it is capable of a narrowing application through a case by case analysis to which its sanctions, assertedly, may not be applied.

The Eighth Circuit has specifically addressed a challenge that Section 305 had been improperly applied to regulate defendant's speech. In finding that the defendant's reliance on cases concerning speech was inapposite, the Court stated:

The statute in question is directed primarily at specific types of conduct. While the prohibited conduct may include speech, it does so only where the manner

of expression is itself unreasonable. Reasonable time, place and manner regulation may be applied to speech irrespective of content.

*U.S. v. Occhino,* 629 F.2d 561, 563 (8th Cir. 1980); Accord, *Greer v. Spok, supra,* 424 U.S. at 835–836, 96 S.Ct. at 1216–1217; quoting from *Hague v. CIO, supra,* 307 U.S. at 515–516, 59 S.Ct. at 963–964.

Accordingly, this court rejects defendant's contention that § 305 is facially unconstitutional.

 However, having held a trial on the merits as to § 305 on April 6, 1981, this court now concludes that § 305 has been unconstitutionally applied as to defendant Parisi.

Section 305 permits the FPS to regulate, among other things, "disorderly conduct or other conduct which creates loud or unusual noise or a nuisance" or which "unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, . . . ." or which "impedes or disrupts the performance of official duties by Government employees."

The testimony offered at trial by the arresting officer, Pawlowski, however, does not support a conviction under this regulation.

The officer testified that Parisi was arrested for his failure to produce identification whereas the other 15 or so anti-draft demonstrators were not arrested because they produced identification. This court, however, does not find this conduct to be of the type covered under § 305.

■ Nevertheless, at trial, the government attempted to show that the arrest and prosecution were justified on the grounds that these demonstrators were "impeding or disrupting the performance of official duties by Government postal employees." However, the proof offered at trial was insufficient to demonstrate that the demonstrators interfered with the Post Office employees duties. Moreover, this court had the benefit of hearing the anti-draft songs being sung by the defendant and other demonstrators and cannot see, how, if at all, these songs could be said to be disruptive.

Additionally, the singing was at all times taking place at a distance sufficiently removed from the work areas of the government employees. Moreover, the fact that defendant Parisi alone was arrested is inconsistent with a claim that the arrest was due to the conduct proscribed by § 305.

Accordingly, it is ordered that this case be dismissed, the government having failed to establish by sufficient proof that defendant Parisi's conduct fell within the scope of regulation § 305.