**UNITED STATES of America,
Appellee,**

v.

**Peter J. DEMOTT, Appellant.**

**No. CR. 00–404–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 10, 2001.

Helen F. Fahey, United States Attorney, William C. Henderson, Special Asst. U.S. Atty., Alexandria, VA, for Plaintiff.

Sebastian K.D. Graber, Esquire, Wolftown, VA, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

At issue is the constitutionality of two regulations governing conduct at the Pentagon. Defendant/Appellant Peter J. De-Mott ("DeMott") brings this appeal from the decision of the Magistrate Judge finding him guilty of failing to obey a police officer's lawful order to move from one location to another while engaged in peaceful protest on the grounds of the Pentagon. For the reasons set forth below, the Court affirms the opinion of the Magistrate Judge and upholds the challenged regulations.

### I.

The following discussion of the facts is drawn from the Magistrate Judge's Report of November 3, 2000. Appellant DeMott was arrested on August 6, 1999, outside the Pentagon, where he and others had gathered, without a permit, for a demonstration to mark the anniversary of the bombing of Hiroshima. The demonstrators gathered on the steps of the River Entrance [1] but did not wholly block ingress to the building. After allowing the demonstration to continue for some time, the security officer in charge decided, for security and other reasons, to move the demonstration from the River Entrance steps to a sidewalk at some distance from the River Entrance. Evidence in the record shows that the arresting officer had received word that the Secretary of Defense was en route to the Pentagon, although the demonstrators were not informed of this fact. After several requests that the protesters relocate were refused, Defense Protective Services officers arrested several demonstrators, including DeMott.

After a bench trial and evidentiary hearing, DeMott was convicted of violating 32 C.F.R. § 234.6(b) (the "lawful order" regulation). The Magistrate Judge upheld the constitutionality of that regulation in the face of DeMott's attack on it. He sentenced DeMott to thirty days' imprisonment, which DeMott immediately served.[2]

---

1. The Secretary of Defense and other high-level officials and visitors typically enter the Pentagon through the River Entrance, which is why it was chosen as the site for the protest.

2. DeMott's appeal is not, however, moot, because of the possibility that he may suffer

DeMott raises three grounds for reversing his conviction: first, that the Pentagon's "permit" regulation, 32 C.F.R. § 234.3(d), is unconstitutional on its face and as applied; second, that the "lawful order" regulation is unconstitutional on its face and as applied; and third, that the evidence was insufficient to establish a violation of 32 C.F.R. § 234.6(b).

## II.

"In reviewing a decision of a Magistrate Judge, a district court should utilize the same standard of review utilized by the court of appeals in reviewing a decision of the district court." *Florists' Mutual Ins. Co. v. Tatterson,* 802 F.Supp. 1426, 1431 (E.D.Va.1992); *see also* 28 U.S.C. § 636(c)(4) (1992). Therefore questions of law are reviewed de novo, and questions of fact are reviewed under a clearly erroneous standard. *United States v. Coyle,* 943 F.2d 424, 426 (4th Cir.1991). A court should avoid holding a provision of law to be unconstitutional if it can be fairly construed as constitutional. *United States v. Cassiagnol,* 420 F.2d 868, 873 (4th Cir. 1970).

## III.

*1. The Pentagon's Permit Regulation, 32 C.F.R. § 234.3(d)*

DeMott argues first that the Pentagon's permit regulation, 32 C.F.R. § 234.3(d), is unconstitutional on its face and as applied to the facts of his case. The regulation reads as follows:

> Any person or organization desiring to conduct activities anywhere on the Pentagon Reservation shall file an application for permit with the applicable

Building Management Office. Such application shall be made on a form provided by the Department of Defense and shall be submitted in the manner specified by the Department of Defense.

32 C.F.R. § 234.3(d). In other words, one must secure a permit before conducting any activity on the Pentagon Reservation (the area surrounding the Pentagon building), including staging a demonstration. The permit form requires that the applicant supply "a copy, sample and/or description of any materials or items proposed for distribution." DeMott contends that the permit requirement is constitutionally invalid as a prior restraint on speech and because it is overbroad and vague.

Before the Court can consider the constitutionality of the permit regulation, it must determine the type of forum at issue. The Supreme Court in *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. *Perry,* 460 U.S. at 44–46, 103 S.Ct. 948. In traditional public fora, such as public parks and streets, the government may impose content-based regulations only if those regulations are "necessary to serve a compelling state interest and [are] narrowly drawn to achieve that end." *Perry,* 460 U.S. at 45, 103 S.Ct. 948; *see also Shopco Distribution Company, Inc. v. Commanding General of Marine Corps Base,* 885 F.2d 167, 171 (1989). In a public forum, the government may impose content-neutral time, place, and manner restrictions only if they are "narrowly tailored to serve a significant gov-

---

"collateral legal consequences" from the sentence he has served. *Minnesota v. Dickerson,* 508 U.S. 366, 371 n. 2, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (citations omitted). Thus,

DeMott still has standing to challenge his conviction. *North Carolina v. Rice,* 404 U.S. 244, 247, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

ernment interest, and leave open ample alternative channels of communication." *Id.* Public property which has been opened by the government as a place for expressive conduct is subject to a similar standard, although the government may limit expressive activity to a particular class of speakers or topic. *Perry,* 460 U.S. at 45–46 and n. 7, 103 S.Ct. 948; *see also Warren v. Fairfax County,* 196 F.3d 186, 193 (4th Cir.1999) (denoting this category as a "designated public forum"). The third type of forum is a nonpublic forum, that is "public property that is not by tradition or designation a forum for public communication," *Perry,* 460 U.S. at 46, 103 S.Ct. 948. In a nonpublic forum, the government may preserve the forum for its lawfully-dedicated purpose, including through the imposition of time, place, and manner restrictions and reasonable, content-neutral regulations on speech. *Perry,* 460 U.S. at 46, 103 S.Ct. 948; *Shopco,* 885 F.2d at 171–72.

DeMott argues that the Pentagon Reservation grounds, as the headquarters of a government agency, are a public forum for purposes of First Amendment analysis. Appellant's Brief at 26–27. The Government counters that the Pentagon Reservation grounds are more analogous to a military installation, which courts have consistently held not to be a public forum, than to a public area such as a park or street. In *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), for example, the Supreme Court noted that although the public has access to Fort Dix, the military installation at issue in that case, it is not correct to assert that "whenever members of the public are permitted freely to visit a place owned or operated by the Government, then that place becomes a 'public forum' for purposes of the First Amendment." The Government points out that Fort Dix and the Pentagon Reservation are both defense-oriented facilities and that, in fact,

"the government exercises much greater control over the Pentagon Reservation," in that the Defense Protective Services patrols the entire grounds and most of the grounds are constantly under surveillance by video cameras. Government's Opp. at 11.

 If it is not already a public forum, the fact that the Pentagon is frequently the site of public discourse does not transform it into a public forum. *See Greer,* 424 U.S. at 836, 96 S.Ct. 1211; *Shopco,* 885 F.2d at 173. And because there is no generalized constitutional right to conduct First Amendment activities in a nonpublic forum like a military installation, *see United States v. Albertini,* 472 U.S. 675, 685, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985), the government's ability to limit speech in such a forum is broader. As noted above, the Fourth Circuit in *Shopco* recognized the government's power to impose time, place, and manner restrictions in limited or nonpublic fora. 885 F.2d at 171–72. In addition, the court observed that as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's views, the government may reserve the forum for its intended purposes. *Id.*

DeMott cites *Townsend v. Carmel,* 494 F.Supp. 30 (D.D.C.1979) for the proposition that the Pentagon Reservation *is* a traditional public forum. In that case, the District Court for the District of Columbia held that although the interior of the Pentagon is a non-public forum, the steps at the River Entrance or nearby sidewalks are public fora, and peaceful demonstrations in those sites do not interfere with the normal operation of the Pentagon. *Id.* at 33. For this reason, the District Court in *Townsend* imposed an injunction against

enforcement of a permit regulation that was similar to that at issue in this case.

■ The Fourth Circuit has adopted a similar test in certain cases, although it has not yet considered the First Amendment status of the Pentagon grounds. In *Warren*, for example, the court considered the constitutionality of a county government's refusal to allow a nonresident of the county to erect a holiday display on an outdoor mall across from the county's government center. The court concluded that the mall area was a traditional public forum. In such a forum, the court held, "restrictions on speech ... are justified to the extent that the speech at issue would interfere with the objective purposes and use of the forum." 196 F.3d at 193. Similarly, in *Shopco*, a commercial establishment sought to distribute its advertising circular on the Camp Lejeune Marine Corps Base. In upholding the base's prohibition on such distribution, the court noted that the base was not a public forum. However, the court noted that when limited public discourse has been permitted in a nonpublic forum, the key analytical question is whether the challenged expressive activity would disrupt the "principal function" of the property. 885 F.2d at 173 (*quoting Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 804, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). If so, the court should hesitate to find an intent to designate a public forum by allowing some public discourse. *Id.*

There is little argument that DeMott and the other protesters at the River Entrance on August 6, 1999, did not wholly impede access to the Pentagon and therefore arguably did not interfere with the facility's operation. However, as the Government argued, the presence of numerous protesters on the steps of the River Entrance at a time when the Secretary of Defense was approaching that entrance presented a threat to his safety. As the head of the agency, a security threat to his person constitutes a threat to the normal functioning of the agency's operations, generally. In addition, the concentration of security forces at the River Entrance necessarily reduced their ability to deal with any threat that might arise elsewhere on the Pentagon Reservation.

■ The Court finds that the Pentagon Reservation is not a traditional public forum, nor does the permit system, which allows limited public discourse on the Reservation, make it a public forum. Granted, the Pentagon's role as the political nerve center for the military makes it a prime target for those who disagree with U.S. military policy, and "[i]n general, the grounds ... of state and federal capitol complexes ... have consistently been held to be public fora." *Warren*, 196 F.3d at 195 (*quoting ACT–UP v. Walp*, 755 F.Supp. 1281, 1287 (M.D.Pa. 1991)). Although military installations are generally excepted from that general rule, obviously, the Pentagon and Pentagon Reservation are not what one typically considers a military installation, *i.e.*, a discrete complex where troops are trained and quartered. On the other hand, as the headquarters of the Department of Defense, the Pentagon is uniquely devoted to military affairs and is vital to the national security of the United States. The surrounding Pentagon Reservation is wholly patrolled by the Defense Protective Services, and most of the grounds are constantly under surveillance by video cameras. Although at one time certain interior areas of the Pentagon were open to the public, access is more restricted today. The level of security at the Pentagon is equal to or higher than that maintained at most military installations. The government obviously has an interest in protecting its defense employees at the

Pentagon, as well as foreign officials arriving for defense talks. In short, the Pentagon Reservation is not a public forum, akin to a public street or park.

Moreover, as the Court noted above, the Government's merely allowing limited discourse on the Pentagon Reservation, through the permit system, does not alone render the Reservation a designated (limited) public forum, when it was not already a public forum. *See Shopco,* 885 F.2d at 173. The Court finds that the permit system was not intended to alter the Pentagon Reservation's nonpublic forum status. *See Warren,* 196 F.3d at 193 ("the government may retain nonpublic forum status by allowing selective, permission-only access to the forum."). For First Amendment purposes, then, the Pentagon Reservation is a nonpublic forum. Because DeMott lacked permission to express himself on the Pentagon Reservation grounds on August 6, 1999, if the permit regulation is constitutional, he lacks. a First Amendment basis to challenge the Government's actions.

■ Turning to an examination of the challenged regulation, the Court finds that it is not unconstitutional. First, the regulation is facially content neutral. It applies to "any person or organization" that wishes to conduct activities on the grounds. 32 C.F.R. § 234.3(d). Nor is there any indication that the regulation is enforced in a way that is not viewpoint neutral.

The regulation is also reasonable in light of the important national security purposes it serves. An "incidental burden on speech is no greater than is essential, and

is permissible under [*United States v.] O'Brien,* [391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968),] so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). The regulation allows peaceful protesters to express their views at the headquarters of the Department of Defense. Given the importance to United States security of the Pentagon, *see Cassiagnol,* 420 F.2d at 874, requiring that citizens wishing to engage in protest there obtain a permit to do so is not an unreasonable limitation on their First Amendment freedoms.[3]

Further, the regulation is not unconstitutional as it was applied to DeMott. His Brief stresses that the demonstrators at the River Entrance on August 6, 1999, were marking the anniversary of the bombing of Hiroshima in a way that they had marked the anniversary in prior years. That is, the demonstration was a planned event, not an impromptu gathering. Although DeMott argues that because the regulation was facially unconstitutional, he was not required to obtain a permit, and therefore he could not have violated the provision requiring him to obtain a permit, the Court has found that the provision is constitutional. Thus, DeMott was· required to obtain a permit before he could lawfully engage in protest on the Pentagon Reservation.

Finally, DeMott argues that the Department of Defense has made the River Entrance area available for demonstrations favoring the military, for speeches, and for

---

**3.** In addition, the Court notes that even after the DPS ordered the protesters to vacate the River Entrance steps, they could have continued their protest in the same general vicinity by moving across the parking lot. In other words, DPS consented to allowing the protest to continue, just at a slightly removed location. Thus, while the protesters could not exercise their First Amendment rights in precisely the manner they preferred, they were not denied all outlets for expressing their views.

film making. Brief at 32. Therefore, he argues, his peaceful demonstration concerning U.S. defense policies should have been allowed without a permit. This conclusion does not logically follow from the fact that some groups have been permitted to engage in activities on the Pentagon Reservation. Importantly, DeMott has not shown that those activities were allowed to proceed without a permit or in such a manner that would prove that the regulation was applied in a way that singled him out, based on his viewpoint.

In sum, the Court concludes that the Pentagon and the Pentagon Reservation are not traditional nor designated public fora. In this context, the permit regulation did not impose an unlawful prior restraint on the exercise of DeMott's First Amendment rights, nor is it unconstitutional on its face. The Court therefore upholds the regulation.

*2. The Lawful Order Regulation, 32 C.F.R. § 234.6(b)*

 DeMott argues that the "lawful order" regulation, 32 C.F.R. § 234.6(b), is unconstitutional on its face and as applied to the facts of his case. That regulation prohibits:

> [v]iolating the lawful order of a government employee or agent authorized to maintain order and control public access and movement during firefighting operations, search and rescue operations, law enforcement actions, and emergency operations that involve a threat to public safety or government resources, or other activities where the control of public movement and activities is necessary to maintain order and public health or safety.

32 C.F.R. § 234.6(b). DeMott challenges the constitutionality of the regulation on grounds that it is vague and overbroad, in violation of the First and Fifth Amendments. Specifically, DeMott notes that the regulation does not define "law enforcement actions," nor "other activities where the control of public movement and activities is necessary to maintain order and public health and safety." Appellant's Brief at 33. In addition, DeMott argues that the regulation is insufficiently clear to provide one of ordinary intelligence with reasonable notice of prohibited conduct. *Id.* The Government contends, to the contrary, that the regulation both defines who may issue an order and spells out the circumstance under which the order may be given, and that the implicit limits on its scope—*i.e.,* to orders given on government property—further aid in interpreting the regulation's reach. Government's Opp. at 3.

The court's role in assessing a regulation such as this one is "to examine the contested ... regulation to see whether or not a reasonable construction of the statute will result in a finding of constitutionality." *Cassiagnol,* 420 F.2d 868, 873. Further, "the fact that [a] regulation is applicable to acts and conduct on government property only is highly significant." *Id.* The reviewing court should read the regulation in this context. Thus, the Fourth Circuit in *Cassiagnol* interpreted a regulation's prohibition on "unseemly or disorderly conduct" by reference to "the normal and orderly conduct of government business on such federal property." *Id.* (*quoting United States v. Akeson,* 290 F.Supp. 212, 215 (D.Col.1968)).

DeMott argues that the security officers who patrol the Pentagon Reservation have unlimited discretion to decide whether a demonstrator interferes with the conduct of government business or constitutes a threat to public safety, and therefore the regulation is overbroad. The Court must construe the regulation as constitutional, however, if such a reading is reasonable.

In *dicta*, the Fourth Circuit construed a regulation similar to the one at bar[4] "as extending only to proper orders" and found that it was properly invoked against the appellant, because "[t]he legitimacy of the government's interest, in the abstract, of insuring the public's compliance while in or on government property with proper directions of law enforcement officers ... [is] apparent." *United States v. Shiel*, 611 F.2d 526, 528 (1979).

The Government argues that the regulation in this case gives the officers less discretion to restrict protesters' freedom of expression than the one at issue in *Shiel*. Other regulations applicable to the Pentagon Reservation spell out in detail a core of conduct that is prohibited, including "threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty." Government's Opp. at 4 (*quoting* 32 C.F.R. § 234.6(a)). The Government therefore contends that the regulation, read in context, sufficiently limits officers' discretion and gives citizens adequate notice of prohibited activities. In addition, the lawful order regulation must be read in tandem with the permit regulation. The Court has concluded that the permit regulation is constitutional. Thus, if a citizen protests at the Pentagon Reservation without a permit, DPS officials may lawfully require him to leave the installation, because he lacks authority to be there. In keeping with the Court's mandate to interpret a provision as constitutional, to the extent possible, the lawful order regulation must likewise be upheld.

■ The regulation is also constitutional as applied. In this case, evidence in the record suggests, and the Magistrate Judge found, that the arresting officer perceived that DeMott's behavior posed a threat to Pentagon security. The demonstration, consisting of more than 40 people, required the stationing at the River Entrance of security officers normally on duty elsewhere in the facility. This concentrated the security forces at the River Entrance while reducing the overall level of security elsewhere at the Pentagon. DeMott argues that because a demonstration is held every year on August 6, Defense Protective Services ("DPS") should have arranged for additional security officers to be on duty that day so that no security station would be left understaffed. Be that as it may, the fact remains that given the facts at the time, the arresting officer reasonably perceived that the demonstration undermined DPS's ability to ensure that the entire facility was protected. Further, relocating the demonstration to a sidewalk some distance from the entrance was a reasonable means of reducing the number of officers required to maintain security in the vicinity.

DeMott argues that instructing the protesters to move their activities to the sidewalk area interfered with their First Amendment right to communicate their views to those entering the Pentagon. Arguably the distance from that sidewalk area to the River Entrance was such that the protesters' message could not as easily be communicated orally, as the Magistrate Judge found, nor could written materials as easily be passed to those entering the Pentagon. On the other hand, the record indicates that several of the protesters carried signs which were apparently visible from the entrance. This enabled them to

---

4. That regulation also applied to activities at the Pentagon and stated:

Persons in and on property shall at all · times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals.

41 C.F.R. § 101–20.304 (1978).

 

continue to communicate their message to their intended audience.

In sum, the lawful order regulation is constitutional both facially and as applied to the circumstances of this case. The Court therefore upholds the regulation.

### 3. The Sufficiency of the Evidence

■ Finally, DeMott contends that the evidence against him was insufficient to establish a violation of 32 C.F.R. § 234.6(b), the lawful order regulation. Specifically, DeMott argues that the evidence did not establish (1) that the order to remove himself from the River Entrance steps was a lawful order, and (2) that the order was necessary to maintain order and public safety.

There appears to be no dispute that the demonstration remained peaceful and that the DPS officers were able to ensure continued ingress to the River Entrance. However, these facts do not render the order to move from the entrance *per se* unlawful. Nor does the fact that persons could enter and leave the Pentagon through the River Entrance, despite the demonstration, prove that the order was not necessary to maintain order and public safety. As noted above, the arresting officer had been notified that the Secretary of Defense was en route to the Pentagon. Although the demonstrators were not informed of this fact, the imminent arrival of the Secretary heightened security concerns surrounding the demonstration. The concentration of security forces at the scene of the protest limited the protective service's ability to maintain order elsewhere in the compound. In addition, the Pentagon facility was apparently under a heightened state of security called "Threatcon Alpha."[5] In this context, the

officer could reasonably perceive that a demonstration in such close proximity to the Pentagon posed a threat to order and public safety, even though the protest had thus far been peaceable.

Given these circumstances, the order to move the demonstration away from the entrance was lawful, and the security officers were within their discretion to arrest DeMott when he refused to obey that lawful order and remove himself to a sidewalk at some distance from the steps.

### IV.

For the foregoing reasons, the decision of the Magistrate Judge is **AFFIRMED**. An appropriate Order will issue.

---

**5.** The Government's Opposition notes that this applies when "there is a general threat of possible terrorist activity against installations, building locations, and/or personnel, the nature and extent of which are unpredictable." Government's Opp. at 21.