290 F.Supp. 212 (1968)
UNITED STATES of America, Plaintiff,
v.
John Virgil AKESON, John David Buttny, Mendel L. Cooper, Bruce L. Goldberg, Thomas Glenn Harris, William David Landauer, Richard Moskowitz, Thea Tenenbaum and John Weigand, Defendants.
Crim. A. No. 68-CR-115.
United States District Court D. Colorado.
September 25, 1968.
*213 Lawrence M. Henry, U. S. Atty. for the Dist. of Colo., Milton C. Branch, Asst. U. S. Atty., Denver, Colo., for plaintiff.
Eugene Deikman, Denver, Colo., for defendants.

MEMORANDUM OPINION AND ORDER
WILLIAM E. DOYLE, District Judge.
The defendants are charged by information with violating 41 C.F.R. § 101-19.304, a General Services Administration regulation proscribing "unseemly or disorderly conduct" on federal property under its jurisdiction. The defendants have moved to dismiss the information on the ground that the regulation is unconstitutionally vague. We have heard oral arguments and both parties have filed briefs. Also, we have denied the motion in an oral judgment from the bench. This memorandum will more fully expound the reasons for the denial.
The General Services Administration regulations covering conduct on federal property,[1] including the regulation here in issue, are prominently displayed at the entrances to the Customs House.
The information filed by the United States Attorney charged that the defendants "did violate Title 41, Code of Federal Regulations, Section 101-19.304, a rule or regulation promulgated pursuant to Title 40, United States Code, Section 318a, in that said defendants * * * did engage in unseemly or disorderly conduct within the United States Customs House * * * in that they did wilfully interfere with, delay, and impede the processing of individuals in the Armed Forces Examining and Entrance Station, in violation of 41 C.F.R., Section 101-19.313 and 40 U.S.C., Section 318c.[2]" This information is challenged by the defendants on the ground that 41 C.F.R. § 101-19.304 is unconstitutionally vague. This regulation is entitled "Nuisances" and is part of a group of regulations entitled "Conduct on Federal Property." The regulation states that
"The use of loud, abusive, or otherwise improper language, unwarranted loitering, sleeping or assembly, the creation of any hazard to persons or things, improper disposal of rubbish, spitting, prurient prying, the commission of any obscene or indecent act, or any other unseemly or disorderly conduct on property, throwing articles of any kind from a building and climbing upon any part of a building, is prohibited. 41 C.F.R. § 101-19.304 (1968). (Emphasis added.)
The information is limited to the allegation that the defendants engaged in unseemly or disorderly conduct in violation of 41 C.F.R. § 101-19.304, and therefore the narrow question before the Court is whether the phrase "unseemly or disorderly conduct" is unconstitutionally vague within the context with which it is used in the regulation. This regulation is limited to conduct on federal property, and the concepts of "conduct" and "federal property" are of particular importance in determining the constitutionality of the regulation. The regulation here in question does not deal with conduct on public streets or parks, but rather governs conduct on government property which interferes with normal *214 and orderly government business. The area of government property in question, the Armed Forces Examining and Entrance Station, is not freely open to the public at the time of day involved in this case, and the public's presence there is subject to reasonable restriction. Furthermore, the right of free speech protected by the First Amendment is not involved in this case for the defendants were acting, not speaking. The defendants under the guise of the First Amendment right to peaceably assemble are apparently asserting a right to enter a government building in large groups during hours when the building is not open to the general public and to do so without being subject to limitations on their conduct once they are within the building. Although the defendants attack the regulation as unconstitutional on its face, we cannot determine its constitutionality in a vacuum, but rather we must appraise the phrase "unseemly or disorderly conduct" within the full context with which it is used in this regulation, and finally in the light of the evidence at the trial.
The "invalidity" of this regulation is asserted on two grounds: (1) that the phrase "unseemly or disorderly conduct" is too vague and indefinite to meet the requirements of due process in that men of common intelligence must necessarily guess at its meaning and differ as to its application and (2) that this phrase is so broad that it acts as an unnecessary restraint on First Amendment freedoms.
The Supreme Court has consistently held that the constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by that statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.[3]
Several cases have held disorderly conduct statutes unconstitutionally vague even though their breadth had been narrowed by a construction of the state court. Landry v. Daley, 280 F. Supp. 968 (N.D.Ill.1968); Baker v. Bindner, 274 F.Supp. 658, 663 (W.D.Ky. 1967); Carmichael v. Allen, 267 F.Supp. 985, 997 (N.D.Ga.1967); Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). On its face and without a limiting construction the phrase "unseemly or disorderly conduct" in the regulation in question raises constitutional questions. However, we are mindful of our duty to interpret federal legislation in a manner not inconsistent with the demands of the Constitution; if it can be fairly construed so as to avoid a holding of unconstitutionality, we are obligated to do so. United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)[4]; Dennis v. United States, 341 U.S. 494, 501-502, 71 S.Ct. 857, 863, 95 L.Ed. 1137 (1951)[5]; Screws v. United States, 325 U.S. 91, 65 *215 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Woodard, 376 F.2d 136, 144 (7th Cir. 1967) (concurring opinion); Landry v. Daley, 280 F.Supp. 938, 967 (N.D.Ill.1968); Amsterdam, The Voidfor-Vagueness Doctrine in the Supreme Court, 109 U. of Pa.L.Rev. 67, 86 (1960).
The fact that this regulation applies only on federal property is highly significant. This fact gives rise to a natural and normal construction of the phrase "unseemly or disorderly conduct" as prohibiting conduct on federal property which is intended to and does interfere with, delay, or impede the normal and orderly conduct of government business on such federal property. This is not a strained construction of the phrase for the regulation is clearly concerned with conduct on federal property, is entitled nuisances and is obviously meant to ensure the orderly conduct of government business on federal property.
The questions that are presented by our narrowing construction of the regulation are: (1) does the construction comply with the First Amendment guarantee of the right to peaceably assemble, and (2) if so can it be applied to the defendants in this case?
Our construction of the regulation speaks solely to conduct, not speech, and as Justice Goldberg stated for the Court in Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965):
"We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech." 379 U.S. at 555, 85 S.Ct. at 464-465.
Furthermore, we are not concerned here with conduct on public streets, highways, or parks, but rather with conduct on federal property that interferes with the normal and orderly conduct of government business. As Justice Black stated in Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966):
"The problems of state regulation of the streets on the one hand, and public buildings on the other, are quite obviously separate and distinct. Public buildings such as libraries, school-houses, fire departments, courthouses, and executive mansions are maintained to perform certain specific and vital functions. Order and tranquility of a sort entirely unknown to the public streets are essential to their normal operation." 383 U.S. at 157, 86 S.Ct. at 732 (dissenting opinion). No member of the Court has yet expressed disagreement with this proposition.
The Supreme Court has made it clear in two recent cases that those wishing to protest against governmental action or propagandize their views do not have a constitutional right to do so whenever and wherever they please. Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. State of Louisiana, 379 U.S. 536, 85 S. Ct. 453, 13 L.Ed.2d 471 (1965). In Cox, Justice Goldberg speaking for the Court wrote:
"The rights of free speech and assembly, while fundamental in our democratic *216 society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * * Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations." 379 U.S. at 554-555, 85 S.Ct. at 464 (citations omitted).
That the government may enact and enforce reasonable regulations concerning the use of government property for demonstrations has been unquestionably established by the Court's holding in Adderley v. State of Florida, supra.[6]
The prohibition of the conduct specified by our construction of the phrase "unseemly or disorderly conduct" clearly does not offend the First Amendment right to peaceably assemble. Adderley v. State of Florida, supra; Cox v. State of Louisiana, supra; Cameron v. Johnson, 390 U.S. 611, 616-617, 88 S. Ct. 1335, 1338-1339, 20 L.Ed.2d 182 (1968). Note, Regulation of Demonstrations, 80 Harv.L.Rev. 1773, 1776-1777 (1967).
The defendants object to this construction of the regulation being applied to them in this case on the ground that they had no notice that their conduct was prohibited and thus such an application would violate due process. Connally v. General Construction Co., 269 U. S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). However, as stated by the Supreme Court in Dombrowski v. Pfister, once an acceptable limiting construction is obtained, it may be applied to conduct occurring prior to the construction provided such application affords fair warning to the defendants.[7] Here the application of the limiting construction affords fair warning to the defendants because their conduct on government property, i. e., conduct which impeded or obstructed the orderly conduct of government business, was not constitutionally protected[8], and such conduct was in a sense unlawful per se and would be prohibited under any construction of the regulation. See Dombrowski v. Pfister, 380 U.S. 479, 491-492, 85 S.Ct. 1116, 1123-1124, 14 L.Ed.2d 22 (1965); Shuttlesworth v. City of Birmingham, 382 U.S. 87, 99, 86 S.Ct. 211, 218, 15 L.Ed.2d 176 (1965) (concurring opinion of Justice Brennan); United States v. Woodard, 376 F.2d 136, 145 (7th Cir. 1967) (concurring opinion). A person of ordinary intelligence has notice, even from a very broad statute, that certain "hard-core" acts are prohibited. Id. The regulation before us was obviously designed to ensure orderly conduct on federal property and a person *217 of ordinary intelligence would certainly realize after reading it that conduct that interferes with, delays, or impedes the normal and orderly process of government business would be subject to a sanction.
Our construction of the phrase "unseemly or disorderly conduct" delimits the regulation to the kind of "hard-core" conduct which would obviously be prohibited and which cannot be tolerated under our system of ordered government. The regulation may be therefore legitimately applied to conduct occurring before that construction. See Shuttlesworth v. City of Birmingham, 382 U.S. 87, 99, 86 S.Ct. 211, 218, 15 L.Ed.2d 176 (1965) (concurring opinion of Justice Brennan).
It is apparent from the foregoing that the First Amendment freedoms must be gauged in the context in which they are asserted. These rights are not absolute as we have noted previously, and cannot be fully exercised at every place and on every occasion. Furthermore, the fact, if it be a fact, that the defendants disagreed with or considered invalid the particular government business which was then being conducted, could not serve to enlarge the First Amendment rights which they assert.
The defendants, citing decisions such as Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); and Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), point to the threat to First Amendment freedoms occasioned by the discriminatory application of broadly worded statutes designed to maintain public order. In the cases cited, statutes and ordinances were struck down insofar as the facts disclosed that the laws had been applied or construed to allow conviction for the exercise of First Amendment rights. But the information as we construe it does not so operate. The conduct of the defendants is proscribed only if it falls within the above definitions. If it does not, it will be constitutionally protected.
The defendants' motion to dismiss the information is denied and the case shall be set for trial at the earliest possible date.
NOTES
[1] Conduct on Federal Property, 41 C.F.R. §§ 101-19.300-.313 (1968).
[2] 41 C.F.R. § 101-19.313 and 40 U.S.C. § 318c are penalty provisions and provide that anyone who shall violate the regulations in 41 C.F.R. Subpart 101-19.3 shall be fined not more than $50 or imprisoned not more than thirty days, or both.
[3] United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952); Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Jordan v. De George, 341 U.S. 223, 230-232, 71 S.Ct. 703, 707-708, 95 L.Ed. 886 (1951); Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).
[4] In United States v. Harriss, the Supreme Court stated that

"This rule as to statutes charged with vagueness is but one aspect of the broader principle that this Court, if fairly possible, must construe congressional enactments so as to avoid a danger of unconstitutionality. United States v. Delaware & Hudson Co., 213 U.S. 366, 407-408, 29 S.Ct. 527, 535, 53 L. Ed. 836; United States v. Congress of Industrial Organizations, 335 U.S. 106, 120-121, 68 S.Ct. 1349, 1356, 92 L.Ed. 1849; United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 546, 97 L.Ed. 770. * * *" 347 U.S. at 618 n. 6, 74 S.Ct. 812 n. 6.
[5] In Dennis v. United States, the Supreme Court stated that

"we must bear in mind that it is the duty of the federal courts to interpret federal legislation in a manner not inconsistent with the demands of the Constitution. American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 407, 70 S.Ct. 674, 688, 94 L.Ed. 925. We are not here confronted with cases similar to Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Herndon v. Lowry, 1937, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; and DeJonge v. State of Oregon, 1937, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278, where a state court had given a meaning to a state statute which was inconsistent with the Federal Constitution. This is a federal statute which we must interpret as well as judge. Herein lies the fallacy of reliance upon the manner in which this Court has treated judgments of state courts. Where the statute as construed by the state court transgressed the First Amendment, we could not but invalidate the judgments of conviction." 341 U.S. at 501-502, 71 S.Ct. at 863. (Emphasis added.)
[6] The crux of the Court's holding in Adderley was that

"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this `area chosen for the peaceful civil rights demonstration was not only reasonable but also particularly appropriate * * *.' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, Cox v. State of Louisiana, supra, [379 U.S.] at 554-555 and 563-564, 85 S.Ct. at 464 and 480. We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." 385 U.S. at 47-48, 87 S.Ct. 247.
[7] 380 U.S. 479, 491 n. 7, 85 S.Ct. 1116, 1123 n. 7 (1965).
[8] See discussion on pages 215, 216.