UNITED STATES of America, Appellee,

v.

Gary SACHS, Defendant, Appellant.

No. 81–1615.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1982.

Decided June 11, 1982.

Rehearing and Rehearing En Banc
Denied July 2, 1982.

Robert L. Hernandez, Boston, Mass., with whom Kenneth Quat, Maynard, Mass., was on brief, for defendant, appellant.

Janis M. Berry, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., with whom William F. Weld, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Appellant Gary Sachs was convicted of violating 40 U.S.C. § 318a, 41 C.F.R. § 101–20.304 and 41 C.F.R. § 101–20.305, which, taken together, forbid (among other things) "conduct . . . which unreasonably obstructs the usual use of . . . elevators" in a federal building. (See Appendix.) Viewing the evidence in the light most favorable to the Government, *United States v. Benmuhar*, 658 F.2d 14, 16 (1st Cir. 1981); *United States v. Ciampaglia*, 628 F.2d 632, 636 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221, 449 U.S. 1038, 101 S.Ct. 618, 66 L.Ed.2d 501 (1980), the conviction arose out of the following facts: On January 5, 1981, federal protective officers arrested twenty-two people during an anti-draft demonstration taking place outside the draft registry on the second floor of the John W. McCormack Post Office and Courthouse Building in Boston. Those arrested were taken to the United States Marshal's office on the fifteenth floor for processing. While this was going on, the Marshal's office requested federal protective officers to keep the area outside of the office itself clear of persons with no business there. Subsequently, Officers Morse, Donaher, and Hogan saw the appellant and a woman, Carla Wallace, standing in the hallway directly across from the door to the cellblock, partially obstructing the passage. Sachs and Wallace told the officers that they were waiting for friends. The officers said that they would have to leave unless they had official business there, at which point Sachs and Wallace sat down on the floor. After being told that they would be escorted from the area if they did not leave, they rose and went with the officers to the elevator. While in the elevator, they sat down again. The officers told them that they

* Of the Second Circuit, sitting by designation.

could not "sit in the elevator blocking it, they'd have to get up and leave the area." When the elevator reached the first floor, the officers first attempted to carry Wallace from the elevator; rather than resist this attempt, Wallace rose and left the elevator. Sachs, however, refused to comply with attempts to remove him and began to struggle, swinging his arms. The officers gave him a final warning telling him that he would be arrested if he did not get up and leave. He would not do so. He was then arrested.

Sachs waived his right to be tried before a district judge and chose instead to be tried before a United States magistrate. *See* 18 U.S.C.A. § 3401(b),(f) (West Supp. 1982). He was convicted. The presiding magistrate then had the option of sentencing Sachs under either the Youth Corrections Act ("YCA"), 18 U.S.C. §§ 5006–5010 (1976), or other applicable law, namely 40 U.S.C. § 318c. Finding that Sachs would not benefit from treatment under the YCA, the magistrate sentenced him under 40 U.S.C. § 318c to thirty days imprisonment and a fine of $50. He appealed to the district court which affirmed both his conviction and the sentence. *See* 18 U.S.C. § 3402 (1976). He now appeals to this court, making several arguments, none of which is substantial.

█ 1. Sachs takes the language of the regulation that he is accused of violating—"unreasonably obstructs the usual use of ... elevators," 41 C.F.R. § 101–20.305—and makes three claims. First, he says that "unreasonably obstructs" means "totally obstructs," and there is no evidence that he totally obstructed the elevator. The short answer to this claim is that the words do not mean what Sachs says they mean. "Obstruction" in and of itself does not imply complete blocking; *Black's Law Dictionary* defines that term as "delay, impeding or hindering." *Id.* at 972 (5th ed. 1979). Sachs' counsel conceded at trial that his conduct "may have been an impediment ... [making] egress more difficult [and] may have even inconvenienced some people." And, in ordinary, as well as legal,

English, sitting down in an elevator and impeding access without justification amounts to an "unreasonable obstruction."

Second, Sachs claims that the elevator was not open to the public when he sat down in it. Rather, it was on "independent service," being used by the federal protective officers to respond to the call on the fifteenth floor. Thus, he claims, he did not block its "usual use." The "usual use" of an elevator, however, is to take people of all kinds—both members of the public and government workers in this case—up and down. Nothing in the regulation suggests that these words should be given the restrictive meaning of "public use"—indeed, the regulation itself refers to activities which "impede[ ] or disrupt[ ] the performance of official duties by Government employees," as well as those activities that "prevent[ ] the general public from obtaining the administrative services provided on the property in a timely manner." 41 C.F.R. § 101–20.305.

█ Finally, Sachs claims that if "unreasonably obstructs the usual use" does not mean "totally obstructs the public use," then § 101–20.305 is unconstitutionally vague, failing to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). We disagree. For one thing, in this case, the officers pointed out to Sachs that his conduct was unreasonable and unlawful. But, in any event, a law that forbids "unreasonable obstruction" of elevators plainly gives notice not to sit on the floor, refuse to move, and swing one's arms about. This is a far clearer case than those cases upholding the constitutionality of 41 C.F.R. § 101–20.304, or its predecessors, under which appellant was also convicted (but which regulation is not challenged on this appeal). *United States v. Shiel*, 611 F.2d 526 (4th Cir. 1979) (regulation requiring persons on official property to comply with official signs and orders of federal officers neither overbroad nor vague under First Amendment principles); *United States v. Cassiag-*

*nol*, 420 F.2d 868 (4th Cir.), *cert. denied*, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970) (regulation prohibiting, *inter alia*, unseemly or disorderly conduct on federal property neither vague nor overbroad as it was clearly concerned with ensuring the orderly conduct of government business and defendant's acts were obviously disruptive); *United States v. Akeson*, 290 F.Supp. 212 (D.Colo.1968) (same regulation neither vague nor overbroad). *But see Townsend v. Carmel*, 494 F.Supp. 30, 35–36 (D.D.C. 1980). As noted above, appellant's actions were easily identified as "unreasonable obstruction," and as the Supreme Court has pointed out, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States v. Harriss*, 347 U.S. at 618, 74 S.Ct. at 812.

2. Sachs next raises a series of constitutional claims based upon what occurred on the fifteenth floor. Essentially he argues that the officers violated the First, Fourth, and Fifth Amendments in ordering him to leave the fifteenth floor. We reject these claims for two reasons.

■ First, appellant never raised these arguments, involving both questions of law and of fact, in the course of his trial before the magistrate. In that court, the appellant sought to focus the trial on the actions in the elevator, not those on the fifteenth floor, repeatedly objecting to the introduction of evidence relating to the events on the fifteenth floor or to the demonstration in the building,[1] and never once specifically identified any of the constitutional rights that he now advances. Thus, the manner in which he proceeded below provided no notice to the Government that evidence relat-

ed to the conduct of the officers or others on the fifteenth floor might be relevant to a constitutional claim, nor was such relevance obvious. *Cf. United States v. Levin*, 606 F.2d 47 (3d Cir. 1979) (*per curiam*). Furthermore, the magistrate before whom the trial was conducted cannot be said to have committed error when he failed to rule on questions of law or find facts pertinent to a claim never argued to him. "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as in civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944). Appellant's newly-raised defenses were known to him at the time of trial; failure to articulate them at any time during those proceedings must constitute a waiver. *Jennings v. Illinois*, 342 U.S. 104, 109, 72 S.Ct. 123, 126, 96 L.Ed. 119 (1951); *United States v. Braunig*, 553 F.2d 777, 780 (2d Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977); *Watson v. United States*, 439 F.2d 442, 453–54 (D.C.Cir.1970) (*en banc*). *Cf. M. DeMatteo Construction Co. v. United States*, 433 F.2d 1263 (1st Cir. 1970); *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962).

■ Secondly, we find no special circumstances justifying departure from that rule here. The record reveals no *obvious* constitutional error of the sort that appellant alleges. Rather, the Marshal's office, when particularly busy, merely asked the federal protective officers to clear the area around the cellblock of persons who had no business there. The reason for clearing the area was reasonable, not arbitrary or capricious, as

---

1. Some evidence was introduced as to events on the fifteenth floor by both the Government and the defense. The Government evidence with regard to the fifteenth floor was either in the nature of general background or support for the argument that Sachs was given every opportunity to leave before being arrested. The defense evidence was focused on disproving the voluntariness of Sachs' actions and on forming a basis for a constitutional vagueness

argument with respect to 41 C.F.R. § 101–20.-304 (neither of which issues is raised in this appeal). The exclusive focus of the defense arguments on the law and evidence, as it related to the fifteenth-floor actions, was related to these theories; there was no notice to the Government of the appellant's present argument, and we cannot know what evidence the Government might have introduced had those issues been raised at trial.

appellant alleges in his "Fifth Amendment" claim. There is no evidence that he was selected for removal for political association reasons as he alleges in one facet of his "First Amendment" claim; nor does he have a cognizable First Amendment associational interest in waiting in the cellblock area for persons being processed. *Colton v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). Finding no fault in the directions of the officers telling him to leave, we would be hard put to recognize that the "Fourth Amendment" claim that he was seized on the fifteenth floor was valid.

Further, more detailed analysis of the various constitutional claims raised is impossible on the record before us. Not having raised these issues below, there is no argument on the law or other discussion to indicate which if any of the constitutional claims was considered by the magistrate or what standards of law were applied. There is no indication of findings of fact relating to any of the claims. And, it would take unusual facts to lead us to accept appellant's claim, namely, that some kind of unconstitutional activity on the fifteenth floor justified his breaking the law *later* by blocking the elevator. As there is no obvious constitutional infringement and an insufficient record to probe the possibilities of more subtle violations, we decline to consider this such an "exceptional case" where it is necessary to relax the bar against new theories on appeal "in order to prevent a clear miscarriage of justice." *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d at 500.

3. Appellant's third set of arguments challenge his sentencing under 18 U.S.C.A. § 3401, the statute giving magistrates jurisdiction to try certain offenses. Essentially, the statute allows persons charged with minor offenses to waive trial by a district judge in favor of trial by a magistrate. The statute specifically states that a "magistrate *may*, in a case involving a youth offender [*i.e.*, a defendant who was less than twenty-two years old at the time of the offense] . . ., impose sentence and exercise the other powers granted to the district court under [the Youth Corrections Act (the YCA)] . . . ." But, it conditions this latter authority by adding that:

(1) the magistrate may not sentence the youth offender to the custody of the Attorney General [under the YCA] . . . for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense;

(2) such youth offender shall be released conditionally under supervision no later than 3 months before the expiration of the term imposed by the magistrate, and shall be discharged unconditionally on or before the expiration of the maximum sentence imposed . . . .

18 U.S.C. § 3401(g)(1), (2) (West Supp. 1982). (See Appendix.) Appellant argues that the second condition just quoted means that *all* "youth offenders" must be released from prison three months before their terms expire, and since it is undisputed that he was a youth offender and was only sentenced to one month, he need not go to prison. Appellant recognizes that the YCA, while designed to allow judges to "sentence [a] youth offender to the custody of the Attorney General for treatment," 18 U.S.C. § 5010(b), also specifically allows the judge to impose the ordinary substantive penalty when he finds the "youth offender will not derive benefit from treatment" under the YCA. 18 U.S.C. § 5010(d). But, he claims that this very fact—the very existence of this latter clause in the YCA itself—shows that *all* sentencing takes place *under* the YCA, even when the judge decides to apply the normal statutory penalties rather than the special YCA penalties. Hence, he concludes that clause (2) above applies whenever a magistrate sentences any youth offender.

We reject this ingenious argument for several reasons. First, from a linguistic point of view, clause (2) begins with the words "*such* youth offender" (emphasis added). The word "such" apparently refers to a youth offender described in clause (1), namely, a youth offender who has been sentenced to the custody of the Attorney General for treatment. At a minimum, it

must refer to a youth offender sentenced under the YCA. Section (g) itself, by using the word "may," rather than "shall" or "must," indicates that a magistrate (like a judge) need not sentence *all* youth offenders under the YCA but can, instead, sentence them under the regular substantive statute that they have violated. The fact that the YCA itself also specifically allows him to do this—to reject the special YCA penalties and turn instead to the regular substantive law—does not (as a matter of ordinary English) make his decision to reject the YCA on the ground that Sachs would not benefit from treatment under its provisions in and of itself a decision to use (or to sentence "under") the YCA.

■ Second, an examination of the structure of the YCA shows that the framers of the exceptions to the magistrates' sentencing powers intended clause (2) of the exceptions to refer only to those sentenced to the custody of the Attorney General for treatment. The YCA allows a judge four alternatives in sentencing a youth offender: (a) He can suspend sentence and place him on probation. (b) He can sentence him to the custody of the Attorney General for treatment (which consists of various types of confinement, work on farms, camps and other special conditions) for up to six years. (c) He can sentence him to the custody of the Attorney General for treatment for more than six years under certain circumstances. (d) He can sentence him under any other applicable statute if he finds that the offender will not benefit from the treatment under options (b) or (c). 18 U.S.C. § 5010(a), (b), (c), (d) (1976); 18 U.S.C. § 5017(c), (d). (See Appendix.) The YCA provides limitations applicable to sentencing by judges similar to clause (2) applicable to sentencing by magistrates, *but only where sentencing for treatment is at issue.* Thus, when a judge sentences a youth offender for treatment for less than six years (under 18 U.S.C. § 5010(b)), he "shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction." 18

U.S.C. § 5017(c). And, when a judge sentences a youth offender to treatment for more than six years (under 18 U.S.C. § 5010(d)), he "shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court ... [and he] shall be discharged unconditionally on or before the expiration of the maximum sentence imposed...." 18 U.S.C. § 5017(d).

When carrying forward the provisions of the YCA to magistrate sentencing, adapting them to take account of the magistrate's more limited sentencing powers, the drafters apparently did no more than apply a similar "early release" provision to similar "treatment type" sentences. Thus, just as a judge sentencing a youth offender to "treatment" of six years or less must allow conditional release after four years, and a judge sentencing him to more than six years of treatment must allow conditional release at least two years before the end of his sentence, so a magistrate, able to sentence a youth offender for treatment for no more than one year, must allow conditional release no later than three months before the expiration of the term.

There is no reason to believe that the drafters of clause (2) intended anything more. Indeed, the House Conference Report on the Federal Magistrate Act of 1979, which enacted § 3401(g), referring to the purpose of the "exceptions" of that section, states that in order

> to give guidance to the Bureau of Prisons and to preserve a core concept of the YCA—that rehabilitation should be substituted for retribution for the sentencing of certain types of youthful offenders— the conditional release and unconditional discharge provisions of the YCA are carried forward in the magistrates' legislation.

H.R.Conf.Rep.No.96–444, 96th Cong., 1st Sess. 9–10, *reprinted in* [1979] U.S.Code Cong. & Ad.News 1487, 1490. We have found nothing in the legislative history to indicate an intent that the "conditional release" clause in the magistrates' jurisdiction

provisions applies to anything other than sentencing under the treatment provisions of the YCA, to which similar clauses are tied in the YCA itself. Since appellant was not sentenced for "treatment," the statute and the legislative history of the Act suggests clause (2) was not intended to apply to his case.

Third, to adopt appellant's interpretation of clause (2) would work a rather startling and anomalous change in the law. Those youths sentenced by magistrates under ordinary law to prison terms of less than ninety days would find themselves automatically released without spending any time in prison. Those similarly sentenced by district judges would not be released. Moreover, early release, which Congress found to be desirable when a youth offender is found likely to benefit from special "treatment," would automatically be applied to youth offenders whom magistrates find specifically would not benefit from any special treatment. This makes little sense. We will not presume that such was the intent of Congress in the absence of statutory language requiring this result or any supporting legislative history. We conclude that the words "such youth offenders" in clause (2) of 18 U.S.C.A. § 3401(g) refer to those youth offenders mentioned in clause (1), namely, those whom magistrates have found will benefit from the YCA's special sentences for "treatment." Clause (2) does not apply to those, like Sachs, whom a magistrate has found will not benefit from the YCA and who are sentenced under other applicable law.

■ 4. Appellant attacks his sentence on two additional grounds. First, he argues that the magistrate based his sentence on an impermissible factor—his political beliefs. Even if we accept appellant's claim that he raised this argument in the district court below (the record is at best highly ambiguous), we reject the claim itself here. We can find nothing in the record to suggest that the magistrate was influenced by appellant's political views. Appellant argues that the fact that seventeen draft protesters, arrested in the McCormack Building on the same day and tried by the same magistrate, were all given maximum sentences for their offenses demonstrates political bias. We disagree. Nothing has been cited to indicate that in any of those cases the magistrate was influenced by political considerations any more than in this case. And, in this case, except for appellant's statement that he had friends who were involved in the demonstration, there is no record evidence as to what his political beliefs were, much less that the magistrate considered them in sentencing.

■ Appellant also claims that the similar sentencing of the seventeen protesters, giving all those convicted the maximum, shows that the magistrate sentenced mechanistically and therefore unlawfully. *United States v. Foss,* 501 F.2d 522, 527 (1st Cir. 1974). We believe to the contrary—that it shows he sentenced those seventeen defendants consistently. After all, they had committed identical offenses at the same time and in the same place. Insofar as indications that the magistrate considered special individualizing factors in this case are needed, they are present. The magistrate, for example, specifically found that appellant would not benefit from the YCA. He reviewed several other specific factors related to appellant at the time of sentencing. And, he referred specifically to appellant's individual needs in recommending that he be placed in a facility where he can receive appropriate medical attention. This is not a case where "sentencing discretion is not exercised at all." *Id.* We find no basis here for reviewing the appropriateness of appellant's sentence. *United States v. Reed,* 674 F.2d 128 (1st Cir. 1982).

■ 5. Finally, appellant claims that his sentence (thirty days and $50) was so grossly disproportionate to his crime (sitting down in the elevator) that it constitutes constitutionally forbidden cruel and unusual punishment. U.S.Const.Amend. VIII. Recent controlling precedents on this issue make it clear that appellant's argument is without merit. *Hutto v. Davis,* —— U.S. ——, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (*per curiam*), *reh. denied,* —— U.S. ——,

102 S.Ct. 1742, 72 L.Ed.2d 156 (1982); *Rummell v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

*Affirmed.*

## APPENDIX

Section 318a provides in part:

> The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the Federal property under their charge and control, and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in section 318c of this title, as will insure their enforcement.... 40 U.S.C. § 318a (1976).

Section 318c provides:

> Whoever shall violate any rule or regulation promulgated pursuant to section 318a of this title shall be fined not more [than] $50 or imprisoned not more than thirty days, or both. 40 U.S.C. § 318c (1976).

Regulation § 101–20.304 provides:

> Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals. 41 C.F.R. § 101–20.304 (1980).

Regulation § 101–20.305 provides:

> Any unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited. 41 C.F.R. § 101–20.305 (1980).

Section 3401(g) provides in full:

> (g) The magistrate may, in a case involving a youth offender in which consent to trial before a magistrate has been filed under subsection (b) of this section, impose sentence and exercise the other powers granted to the district court under chapter 402 and section 4216 of this title, except that—
>
> (1) the magistrate may not sentence the youth offender to the custody of the Attorney General pursuant to such chapter for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense;
>
> (2) such youth offender shall be released conditionally under supervision no later than 3 months before the expiration of the term imposed by the magistrate, and shall be discharged unconditionally on or before the expiration of the maximum sentence imposed; and
>
> (3) the magistrate may not suspend the imposition of sentence and place the youth offender on probation for a period in excess of 1 year for conviction of a misdemeanor or 6 months for conviction of a petty offense.

This section was added to the rest of § 3401 by the Federal Magistrate Act of 1979, Pub. L.No. 96–82, § 7(a)(4), 93 Stat. 643 (1979).

Section 5010 provides:

> (a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.
>
> (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Commission as provided in section 5017(c) of this chapter; or
>
> (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the

Commission prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Commission as provided in section 5017(d) of this chapter.

(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

. . . .

18 U.S.C.A. § 5010 (West Supp. 1982).

Section 5017(c) provides:

A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction. 18 U.S.C. § 5017(c) (1976).

Section 5017(d) provides:

A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction. 18 U.S.C. § 5017(d) (1976).