UNITED STATES of America, Appellee,

v.

Mark BADER, et al., Defendants,
Appellants.

No. 82–1346.

United States Court of Appeals,
First Circuit.

Argued Nov. 2, 1982.

Decided Jan. 24, 1983.

Alan D. Rose, with whom Joseph F.
Keefe, and Nutter, McClennen & Fish, Bos-

ton, Mass., were on brief, for defendants, appellants.

Brackett B. Denniston, III, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and BREYER, Circuit Judges, and HEMPHILL,* Senior District Judge.

BREYER, Circuit Judge.

The seventeen appellants in this case conducted a sit-in inside the John W. McCormack Post Office and Courthouse Building in order to protest draft registration. They were arrested and charged with violating 40 U.S.C. § 318c, which, taken together with 41 C.F.R. § 101–20.304 ("§ 304") and 41 C.F.R. § 101–20.305 ("§ 305"), forbids (among other things) failing to obey "the direction of Federal protective officers" and creating certain disturbances in federal buildings. (See appendix.)

They were tried before a United States Magistrate in two groups, three defendants on January 13, 1981, and fourteen others two weeks later. The evidence at both trials was basically the same. It consisted of stipulations, copies of regulations posted in the McCormack Building, testimony of federal protective officers, and photographs of the demonstration. The photographs and testimony show that the defendants sat close together in the doorway leading to the draft registration room. As the defendants themselves stated, they were "blocking" the doorway. Those registering had to step over them; some registrants were helped by the protective officers. The officers told the defendants to leave, and after the defendants refused to do so, the officers arrested them. The government did not introduce evidence showing that anyone was actually prevented from registering or that defendants' activities interfered with the performance of the duties of any other government employee.

Appellants were convicted and sentenced to the maximum penalty of thirty days'

imprisonment and a $50 fine. They appealed to the district court, under 18 U.S.C. § 3402, and their convictions were affirmed. They now appeal to this court, arguing first, that the government did not prove the crime it charged; second, that their convictions violated rights protected by the First Amendment; and third, that the Magistrate did not properly explain to them their rights to counsel. We reject these contentions and affirm the convictions.

■ 1. Defendants' "inadequate proof" argument is highly technical. One of the regulations they were charged with violating prohibits

[a]ny unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances ...; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner ....

41 C.F.R. § 101–20.305. In its complaint, the government charged them with violating this regulation in part by

creat[ing] ... a disturbance that unreasonably obstructed the usual use of entrances, ... thus impeding and disrupting the performance of official duties by Government employees and preventing the general public from obtaining the services provided in the J.W. McCormack Building ....

Appellants argue that, because the government used the word "thus" in its complaint, it must prove *both* that they "unreasonably obstructed the usual use of entrances" *and* that this obstruction disrupted official duties or prevented the public from obtaining services. They argue that the government failed to make this latter showing.

We reject this argument because the government adequately proved that the defendants "unreasonably obstructed the usu-

---

* Of the District of South Carolina, sitting by designation.

al use" of the entrances to the draft registration room. The government need prove no more. Section 305 is phrased in the *alternative*. Conduct violates the regulation if it "creates . . . a nuisance" *or* if it "unreasonably obstructs the use of entrances," *or* if it "otherwise impedes or disrupts the performance of official duties" *or* if it "prevents the general public from obtaining services."

The complaint does not use the statute's disjunctive "or," for the simple reason that, when a statute is phrased in the disjunctive, it is well-established that a criminal complaint based on that statute must be phrased in the conjunctive. *See, e.g., United States v. Murray,* 621 F.2d 1163, 1171 n. 10 (1st Cir.1980); 1 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 125 (1982). (If the complaint used the word "or," the defendant would not know which act he was charged with committing. The use of "and" merely notifies the defendant that the government will try to prove each of the connected offenses listed in the complaint.) It is equally well-established that the government need prove only one of the conjunctively connected offenses to warrant conviction. *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). And, the government did so here.

Appellants point to the complaint's use of the word "thus" instead of "and." But it is difficult to see why that makes a difference. The purpose of the pleading is to inform the defendant of the charge so that he can prepare a defense. *United States v. Jones,* 647 F.2d 696, 699 (6th Cir.1981); *United States v. Contris,* 592 F.2d 893 (5th Cir.1979). We do not see that the use of this word confused the appellants or otherwise interfered with their preparations. The word "thus" in context suggests "and therefore." If anything, it clarifies the charge, for it implies that the "obstructing" is what created the "impeding," instead of the "impeding" having been caused by some other, independent act. In any event, the lack of prejudice is indicated by the fact that the appellants apparently did not think to make this argument to the courts below—a fact that might independently bar appellants from making the argument here, were the matter substantively more difficult. *See Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979).

2. Appellants argue that the First Amendment bars their conviction. Contrary to appellants' claim, however, the conduct in which they engaged—despite its symbolic purpose—is not immune from punishment. Even were "pure speech" at issue, the government can restrict "[t]he right to use a public place for expressive activity" through "reasonable 'time, place and manner' regulations [which] may be necessary to further significant government interests. . . ." *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Moreover, where, as here,

> 'speech and nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). It is well established that the need to safeguard the normal functioning of public facilities is a "substantial government interest" sufficient to warrant reasonable restrictions on even "pure speech," let alone symbolic conduct. *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). If the government can punish those who demonstrate in an orderly way on jailhouse grounds, *Adderley, supra,* those who peacefully picket "near" a courthouse, *Cox, supra,* those who interfere with traffic on public ways, *see Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), and those who would make speeches in the reading room of a public library, *see Grayned,* 408 U.S. at 116, 92 S.Ct. at 2303, it surely can punish those who physically obstruct a doorway, and make it more difficult for the public to conduct its business—especially since, un-

like a street or sidewalk, *see Hague v. C.I.O.,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939), a post office and courthouse building is not customarily open for use for demonstrations or similar speech-related purposes. Governing precedent makes clear that a sit-in that obstructs an entryway in such a building during normal business hours is "basically incompatible with the normal activity of [that] particular place at [that] particular time." *Grayned v. City of Rockford,* 408 U.S. at 116, 92 S.Ct. at 2303. *See* L. Tribe, *American Constitutional Law* § 12.21.

■ Appellants alternatively argue that, even if their activity is punishable as "obstruction," they were also charged with violating § 304, which requires obedience to directives of Federal protective officers. They argue that § 304 might be used to inhibit *other* speech activity which the Constitution protects from punishment. Therefore, asserting the interests of others, they ask that § 304 be declared invalid on its face as overbroad. *See* Monaghan, *Overbreadth,* 1981 Sup.Ct.Rev. 1.

The courts that have previously considered this argument, for § 304 and other similar regulations, have rejected it. *United States v. Shiel,* 611 F.2d 526 (4th Cir. 1979) (regulation requiring persons on official property to comply with official signs and orders of federal officers); *United States v. Cassiagnol,* 420 F.2d 868 (4th Cir.), *cert. denied,* 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed. 654 (1970) (regulation prohibiting, *inter alia,* unseemly or disorderly conduct on federal property); *United States v. Akeson,* 290 F.Supp. 212 (D.Colo.1968) (same regulation). *But see Townsend v. Carmel,* 494 F.Supp. 30, 35–36 (D.D.C.1980). We have previously cited these cases with approval. *United States v. Sachs,* 679 F.2d 1015, 1017–18 (1st Cir.1982).

■ These holdings reflect the Supreme Court's directive that the "drastic" remedy of striking down a statute as overbroad is to be used sparingly. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *New England Accessories Trade Ass'n, Inc. v. City of Nashua,* 679 F.2d 1 (1st Cir.1982). The Supreme Court has stated that where protected speech is mingled with punishable conduct, traditional judicial reluctance to allow one who is punishable to assert the rights of others may yield only to the "most 'weighty countervailing policies.'" *Broadrick v. Oklahoma,* 413 U.S. at 611, 93 S.Ct. at 2915. According to the Supreme Court, a court may hear an overbreadth challenge only when the risk that the statute will prevent protected speech is "not only ... real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.,* at 615, 93 S.Ct. at 2917.

Here, the regulation at issue is not aimed at speech but, rather, at ordinary conduct legitimately subject to regulation. It is designed to help the General Services Administration carry out its "duty, to see that government property under its charge and control is in proper condition for normal usage, so that government business may continue." *United States v. Cassiagnol,* 420 F.2d at 874. Moreover, since the regulation may be interpreted to refer to those directions of Federal protective officers which are necessary "to ensure the orderly conduct of government business," *id.,* at 873 (quoting *United States v. Akeson,* 290 F.Supp. at 215), it is unlikely often to impinge upon speech activity. At a minimum, § 304 by its terms applies to so many situations in which speech is *not* involved that the number of times it will be applied to restrict speech would seem comparatively small.

In addition, courts have not insisted that comparable statutes be absolutely precise in their language. *See Cox v. Louisiana, supra* (prohibition on picketing "near" a courthouse held to be sufficiently precise). In fact, it is difficult to see how the language of this regulation ("comply with ... the direction of Federal protective officers") could be made much more precise without significantly impeding the government's ability to achieve the legitimate objectives at which the regulation is aimed. *See Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, 116 (D.C.Cir.1977)

(upholding statute authorizing arrest upon failure to obey a police order to "move on").

For these reasons, in *United States v. Sachs, supra,* and again here, we follow those cases which have upheld such regulations as constitutional. We do not follow the single case we have found to the contrary, *Townsend v. Carmel,* 494 F.Supp. 30 (D.D.C.1980), and we note that the district court in that case followed a doctrine of overbreadth somewhat at odds with the view that the Supreme Court set forth in *Broadrick. Compare Townsend v. Carmel* (citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)) *with Broadrick v. Oklahoma, supra.*

 3. Appellants make several arguments based upon the procedure that the magistrate followed. First, they claim that he did not adequately advise them of their right to counsel at the time of the arraignment. The short and conclusive answer to this contention is that all defendants were represented by counsel at the arraignment. Mr. Hernandez, their attorney, told the magistrate at the outset that he represented all of the defendants; he filed appearances on behalf of each of them; he spoke for each of them; all were aware he was speaking for each of them, claiming to be their attorney, and no one denied it. A court need not inform a defendant of his right to counsel where he is already represented by counsel. *See Miranda v. Arizona,* 384 U.S. 436, 473 n. 43, 86 S.Ct. 1602, 1627 n. 43, 16 L.Ed.2d 694 (1966); *Frohmann v. United States,* 380 F.2d 832, 836 (8th Cir. 1967). We recognize that Magistrate's Rule 2(b) states that "at the defendants' initial appearance on a misdemeanor charge, the magistrate shall inform [him, among other things, of his] . . . right to counsel . . . ." But we do not find reversible error in the magistrate's failure to interpret this rule to lay down an absolute requirement to tell those already represented by counsel of their right to representation. In all but the most unusual circumstances, such a statement would be pointless, and failure to make it could not deprive a defendant of his Sixth Amendment right to counsel.

Second, appellants claim that the magistrate should have explained their right to counsel more clearly and in greater detail at the time of trial itself, when ten of them chose to defend themselves *pro se.* At the beginning of trial, and in the presence of the defendants, the following exchange took place:

The Magistrate: Have you advised the defendants as to their right, if they are indigent, to have counsel appointed for them upon these proceedings?

Mr. Hernandez: They are aware of that, your Honor.

The Magistrate: And none of the defendants has made that request, is that correct?

Mr. Hernandez: None has made that request.

This colloquy, in the case of a defendant already represented by counsel, would seem sufficient. Not only had each defendant heard it, but each defendant at the moment he heard it was still represented by counsel. Hernandez indicated that he had already explained to the defendants their right to counsel. If the magistrate's comments raised any question in his or the defendants' minds, there was ample opportunity to discuss the matter further. There is no reason to believe any defendant failed to understand the point or wished or required further explanation.

Third, the appellants say that the magistrate led them to believe he would not impose a jail sentence; they imply that, without that belief, those who represented themselves might not have done so. Appellants base their suggestion in large part on a statement the magistrate made at the arraignment to a related defendant, who does not appeal, and who was arraigned before they were. The magistrate said,

Neither do you have the right to have counsel appointed for you unless in the opinion of the court there is a distinct possibility of a prison sentence. Absent a distinct possibility of a prison sentence, you do not have the right to counsel in these proceedings. Since you already have counsel, that matter is one that real-

ly doesn't concern you at the present time.

Appellants say that this statement, together with the magistrate's failure to mention the right to counsel, led them to think the crime was too trivial to warrant an attorney, because, they thought, a prison sentence would not be imposed. However, at the arraignment, the magistrate told each group of defendants brought before him that the charged offense carried a possible penalty of imprisonment. His failure to mention the right to counsel is most readily explained by the fact that the defendants were already represented by counsel. And, for defendants to have read the magistrate's conduct as an indication that he would not impose a prison sentence was to rest their hopes on the slenderest of reeds. We agree with the district court that such a conclusion was simply not reasonable.

■ Fourth, appellants claim the magistrate did not adequately explain to each of them individually the dangers of being represented by a single lawyer—he did not make the "multiple representation" inquiries that we required in *United States v. Foster,* 469 F.2d 1 (1st Cir.1972). *See United States v. Waldman,* 579 F.2d 649 (1st Cir.1978); *United States v. Donahue,* 560 F.2d 1039 (1st Cir.1977). The district court agreed with this contention, but affirmed the convictions because the government showed that no material prejudice occurred as the result of non-compliance. *See United States v. Martorano,* 620 F.2d 912, 918–19 (1st Cir.1980); *United States v. Foster,* 469 F.2d at 5. Multiple representation will cause prejudice only if there is an "alternative defense strategy" available to the defendant, and this strategy poses the "potential for conflict of interest among the defendants," *United States v. Martorano,* 620 F.2d at 916. And the district court here found no such potential.

While we are disturbed by the magistrate's failure to give the full advice, we believe that the district court was correct. There is certainly no obvious conflict between individual defendants. The evidence against each was virtually identical; the defenses each made or might have made would seem individually consistent. Appellants argue that, had each had a lawyer, one or more of them might have argued that he or she was not obstructing the doorway; instead, all relied on the "necessity" defense, saying that conscience compelled their actions because draft registration would lead to war. The defense of "no obstruction," however, is perfectly consistent with any such defense. If one defendant argued that he was not sitting in the doorway, certainly others could say the same, and still others could assert the necessity defense. In fact, any defendant could reasonably have asserted *both* defenses at the same time—that is, "I did not happen to obstruct the doorway, but if I did, I did so because I believe that draft registration will lead to war." Nor do we see why the fact of representation by one lawyer prevented any defendant from rejecting the use of the "necessity" defense. If one lawyer could not convince appellants of the dangers of relying on a defense which was likely to be inadequate as a matter of law, it is hard to see how several lawyers could have done better. In sum, we believe the district court was correct; the government proved that there was no "potential for conflict."

The decision of the district court is

*Affirmed.*

## APPENDIX

Section 318a provides in part:

The Administrator of General Services or officials of the General Services Administration duly authorized by him are authorized to make all needful rules and regulations for the government of the Federal property under their charge and control, and to annex to such rules and regulations such reasonable penalties, within the limits prescribed in section 318c of this title, as will insure their enforcement. . . . 40 U.S.C. § 318a (1976).

Section 318c provides:

Whoever shall violate any rule or regulation promulgated pursuant to section 318a of this title shall be fined not more

[than] $50 or imprisoned not more than thirty days, or both. 40 U.S.C. § 318c (1976).

Regulation § 101–20.304 provides:

Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals. 41 C.F.R. § 101–20.304 (1980).

Regulation § 101–20.305 provides:

Any unwarranted loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited. 41 C.F.R. § 101–20.305 (1980).